Murder; life imprisonment.
The nude body of Bertha Mae Mayfield was found on a dirt road in Russell County, Alabama, around 11:30 A.M. on April 2, 1981. The cause of death was determined to be two deep stab wounds, one to the front of the neck and one to the front of the chest. The victim had also sustained injuries consistent with being run over by an automobile traveling at a slow speed while she lay on soft ground. The forensic pathologist who performed the autopsy stated that he believed all of these injuries occurred at approximately the same time.
During the investigation of this homicide, a gray, 1966 Mercury owned by Sammie Washington was impounded and searched. A white footie with blue trim was found beneath the back seat and a knife was found underneath the left side of the driver's seat. No bloodstains or fingerprints were found on the knife. The tread design of one of the tires matched the tread design of at least two of the tire prints found near the victim's body.
The victim had lived with her mother, Irene Wilkerson, at 820 Fifth Avenue, Columbus, Georgia. Also living at this residence were the victim's three minor daughters; the victim's sister, Dorothy Taylor; the sister's son, Perry Taylor; and one Nathaniel Green. On the evening of April 1, 1981, and early on the morning of April 2, 1981, Columbus police officers twice responded to calls reporting fights resulting in injuries at the Wilkerson residence. Neither the appellant nor the victim was directly involved in these altercations.
Officer Henry Antoine answered the second call at approximately 2:30 A.M. He testified that he saw two females and perhaps four males when he arrived. He identified the females as the victim and her mother and one of the males as Nathaniel Green. Green was the injured party and he was later taken to the hospital. Officer Antoine testified that appellant resembled one of the males present, but that he could not positively state that appellant was present.
The State's key witnesses were the victim's two young daughters, Tracy and Sharon Johnson.
Tracy, who was ten years old at the time of the trial, testified that in early April, 1981, she was living at her grandmother's house in Columbus, Georgia. She stated that her mother lived there at times and at other times lived at the appellant's house.
Tracy testified that she and her sister, Sharon, were watching television in their grandmother's room when the appellant came to the house to see the victim. Appellant and the victim went into the children's bedroom and Tracy saw appellant choking the victim. The victim called for her mother (Irene Wilkerson). Mrs. Wilkerson "peeped her head in the door" and told appellant to "get up off of her." Appellant got up and walked out of the room. The victim followed him and asked him not to leave.
The child heard, but did not see, appellant slap the victim, followed by a thud. She then heard her grandmother say to her aunt, "Dorothy, did you see how hard Cecil hit my baby?" *Page 496 
The appellant called Perry Taylor (the child's cousin) in from the front porch and they carried the victim out to Sammie Washington's car and placed her in the floor of the back seat. Tracy stated that she observed this from the living room window. She did not see the victim move or hear her say anything during this time. Appellant got in the driver's seat, Taylor got in the back, and they drove away.
Tracy further testified that the victim was wearing bluejeans, a gray pullover sweatshirt, footies, and tennis shoes when appellant and Taylor carried her out. She identified the footie retrieved from under the back seat of Sammie Washington's car as one her mother had worn that night.
The testimony of Sharon Johnson, the victim's eleven-year-old daughter, was essentially the same. The trial testimony of both children was consistent with statements given to the police on April 7, 1981. However, both children had given prior inconsistent statements. In her first statement, Tracy said a black man named "C" came to the house with the victim. He threatened to kill the victim if she did not leave with him, but he left alone. He later returned, then left around 11:00 P.M. accompanied by the victim. Tracy said she did not hear them say anything. Her next statement essentially followed her trial testimony up to the point when her grandmother spoke to her aunt. She stated that her grandmother then said appellant put the victim over his shoulder and left.
Sharon's first statement was to the effect that her mother left the house with a man named Walter Taylor. In a subsequent statement she said that Walter Taylor left alone and afterwards her mother was fighting with Nathaniel Green. (It is clear from the record that Green's injury did not occur as a result of this fight.)
All the statements made by Tracy and Sharon were admitted into evidence at appellant's trial and defense counsel questioned both children about their inconsistent versions of the night's events.
After appellant's trial and conviction, the district attorney learned that the children were saying that their grandmother stabbed their mother at the house in Columbus, Georgia. Assistant District Attorney Kenneth Davis, the prosecutor at appellant's trial, went to Detroit, Michigan, where the children live with an aunt, and talked with them.
At the hearing on appellant's motion for new trial, Davis testified that both children had told him that their grandmother stabbed their mother with a knife they referred to as a "Dutch." In addition, Sharon recanted her trial testimony and said that although she saw appellant and Taylor at the house, she did not see them carry the victim out to Sammie Washington's car. Davis stated that Sharon was very reluctant to say anything about her grandmother's involvement and that he had, in fact, had a great deal of difficulty in persuading her to talk to him at all.
Tracy told Davis that her grandmother stabbed her mother, but maintained that she saw appellant and Taylor carry her mother out to the car and drive away. Further, she insisted that Sharon had seen this also. Davis taped his conversations with the children and these tapes were admitted into evidence at the hearing.
 I
The sole issue on appeal is whether the trial court erred in denying appellant's motion for new trial. Appellant maintains that he is entitled to a new trial based on the newly discovered evidence contained in the children's statements that Irene Wilkerson stabbed Bertha Mae Mayfield.
In order for a new trial to be granted on the basis of newly discovered evidence, it is essential that the newly discovered evidence meet the following requirements: 1) the evidence will probably change the result if a new trial is granted, 2) the evidence has been discovered since the trial, 3) the evidence could not have been discovered before trial by the exercise of due diligence, 4) the evidence is material, and 5) the evidence is not merely cumulative or impeaching. Bland v. State,390 So.2d 1098 (Ala.Cr.App.), cert. denied, 390 So.2d 1109 (Ala. *Page 497 
1980); Zuck v. State, 57 Ala. App. 15, 325 So.2d 531
(Ala.Crim.App. 1975), cert. denied, 325 So.2d 539 (Ala. 1976).
Facts within appellant's knowledge at the time of trial, whether or not he has disclosed them to his attorney, are not "newly discovered evidence" entitling him to a new trial.Stemple v. State, 352 So.2d 33 (Ala.Cr.App. 1977). This is consistent with the second and third requirements above. In this case, Tracy Johnson's trial testimony and her subsequent statement to Assistant District Attorney Davis are unequivocal on one point: She saw appellant and Taylor carry her mother to Sammie Washington's car, place her in the back seat and drive away. This evidence was known to appellant at the time of trial. If, in fact, Irene Wilkerson stabbed the victim before appellant placed her in the car, this should have been known to appellant at the time of trial. Even if this evidence qualified as newly discovered evidence, it is well established that:
 "[a]lthough a new trial may be granted on grounds of newly discovered evidence which tends to prove that the crime for which the accused has been convicted was actually committed by another, the awarding of a new trial `rests in the sound discretion of the trial court, and depends largely on the credibility of the new evidence.' Prince v. State, Ala.Cr.App., 356 So.2d 750, and the cases cited therein.
 "Further, the decision of the trial court will not be disturbed unless an abuse of discretion can be shown. McBryar v. State, Ala.Cr.App., 368 So.2d 568; Page v. State, 57 Ala. App. 265, 327 So.2d 760." Robinson v. State, 389 So.2d 144, (Ala.Cr.App.), cert. denied, 389 So.2d 151 (Ala. 1980).
Assessing the credibility of evidence presented at a new trial hearing falls to the trial judge because he is in the best position to evaluate the new evidence in light of all that has gone before. See Zuck v. State, supra. The trial judge in this case was aware that Sharon and Tracy had made inconsistent statements prior to trial. He had the opportunity to observe the children's demeanor while they testified at appellant's trial. He had heard the medical testimony to the effect that the victim had sustained the stab wounds and the automobile related injuries at approximately the same time.
The fact that Sharon recanted her trial testimony is not in and of itself significant as "the courts, with their experience with witnesses, generally pay but little regard to the statements of the recanting witness, and only in extraordinary and unusual cases will a new trial be allowed because of the recanting statements." Wallace v. State, 41 Ala. App. 65,124 So.2d 110, cert. denied, 271 Ala. 701, 124 So.2d 115 (1960). We do not think that this is an extraordinary case in regard to the recanting statement of Sharon Johnson. While Sharon now says that she did not see the appellant and Taylor place her mother in the car, Tracy has maintained her trial testimony on this point. Moreover, Tracy insists that Sharon saw this also.
It is our opinion that there was no error or abuse of discretion on the part of the trial judge in denying appellant's motion for new trial. Therefore, the judgment of conviction by the Russell Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.