James Michael Robinett was indicted for sodomy in the first degree in violation of § 13A-6-63 (a)(3), Code of Alabama 1975. The jury found Robinett "guilty as charged in the indictment" and, following a sentencing hearing, the trial judge fixed punishment at 25 years' imprisonment in the penitentiary.
Doug Aycock testified that he was a detective captain with the Sheffield, Alabama Police Department. On September 14, 1984, he received a report that a child had been mistreated. The following Monday, Mrs. Elaine Frost, Mr. Robert Frost and their two sons, Robert and Lee, came to the police station. Aycock took statements from Robert and Lee about an incident which occurred on September 7, 1984. Aycock then went to this appellant's home and asked him to go to the police station to talk about the alleged incident on September 7, 1984. The appellant agreed to talk with Aycock and rode to the police station with him. Upon arrival at the station the appellant, Aycock, and detective Kirk Jones entered an interview room where appellant was advised of his Miranda rights by Aycock. Captain Aycock then told the appellant why they wanted to talk to him and asked the appellant if he wanted to tell his side of what happened. Appellant signed a waiver of rights form and elected to make a statement. In the statement the appellant stated that on September 7, 1984, he told his eight-year-old cousin that he would fix his (the young boy's) video game if he would give the appellant a "blow job". Appellant took his penis out of his pants and the boy put it in his mouth for a couple of seconds. Appellant stated that this boy was his cousin, Lee Frost. Appellant further stated that he also asked Lee's brother, Robert, to give appellant a "blow job", but he refused.
Robert Frost testified that he was eleven years old at the time the incident in question occurred. On September 7, 1984, he and his brother were at his grandmother's house. While he was there, the appellant came over. Appellant called Robert behind the house and asked Robert to "suck him below the waist". Robert refused to do this, stating that his daddy told him not to do that sort of act. Appellant then called Robert's brother, Lee, over to him. The appellant told Lee that he was going to the basement to look for something.
Lee Frost testified that he was eight years old at the time this incident occurred and that the appellant is his father's cousin. On September 7, 1984, he was at his grandmother's house. Lee stated that he was outside playing and saw his brother "Robbie" run away from the hill behind the house. Appellant then called Lee over behind the house and asked Lee to "suck below his waist". Appellant told Lee that he would fix Lee's video game if he would do this act. Appellant then took Lee into the house and told him that they were *Page 954 
going to the basement to look for something. Upon arrival in the basement, the appellant pulled his "thing" out and told Lee to "suck below his waist". Appellant then put his "thing" in Lee's mouth. A short while later, the appellant took Lee back upstairs and told him if Lee told anyone he would break his neck.
Donna Robinett, the appellant's wife, testified that the appellant never left her side the evening of September 7, 1984. She further stated that, after the Frost boys arrived at their grandmother's house, she and the appellant went inside the home and went to bed, where the appellant remained.
The appellant testified in his own behalf and stated that he never asked either Lee or Robbie to perform this act on him. He stated that once the children arrived he, his wife, brother-in-law and grandmother stood outside and watched the children play. Everyone then entered the house, where he and his wife went to bed and stayed for the remainder of the evening.
Vandalia Brown testified that she was the grandmother of Lee and Robert Frost and the appellant. At the time of this incident, the appellant and his wife were living with her. Mrs. Brown testified in essence that on September 7, 1984, the children were never out of her sight and that, once she brought them inside the house, she gave them a bath and put them to bed on a "pallet" in the living room.
 I
The appellant contends that the trial court erred in denying his motion for new trial. Appellant argues that the evidence presented at the motion for new trial hearing constituted newly discovered evidence which would probably have changed the result of the verdict, could not have been discovered before the trial by the exercise of due diligence, was material and admissible and not merely cummulative or impeaching.
On July 18, 1985, just under two months following appellant's conviction, appellant moved for a new trial stating one of the grounds to be "newly discovered evidence." The newly discovered evidence in the instant case is that the victim of the sodomy had recanted his testimony and stated that his testimony at trial was untrue. At the hearing on this motion, Lee Frost testified that he had not told the truth at trial. Lee stated that he had been told to tell the story about the act of sodomy by his mother, but that he did not know his mother's reasons for wanting him to lie. Lee did state that he was afraid of his mother. Lee further testified that he had been around appellant's family a lot since the trial and had even talked to the appellant on the telephone. He stated that appellant promised to take him fishing when he got out of jail. Lee stated that he was sorry that the appellant was in jail and that he felt if he came to court and told a different story then that would help appellant get out of jail. Lee did state, however, that no one had asked him to change his story. Lee also admitted that immediately prior to the hearing, he told the district attorney that he told the truth during trial, but that this statement was also a lie.
Robert Frost, Sr., the father of Lee, testified at the hearing that subsequent to trial of this cause, Lee told him that he had lied when testifying against this appellant. Mr. Frost testified that he believed that Lee was not telling the truth and that Lee was capable of purgering himself.
 "On a motion for new trial based upon newly discovered evidence, the following requirements must be met before a new trial will be granted: (1) the evidence will probably change the result if a new trial is granted; (2) the evidence has been discovered since the trial; (3) the evidence could not have been discovered before trial by the exercise of due diligence; (4) the evidence is material; and (5) the evidence is not merely cumulative or impeaching."
Phelps v. State, 439 So.2d 727 (Ala.Crim.App. 1983); Zuck v.State, 57 Ala. App. 15, 325 So.2d 531 (1975). A trial court's ruling *Page 955 
on a motion for new trial will not be disturbed absent a showing of manifest abuse of discretion. See Baker v. State,477 So.2d 496 (Ala.Crim.App. 1985); Perry v. State,455 So.2d 999 (Ala.Crim.App. 1984); Robinson v. State, 389 So.2d 144
(Ala.Crim.App.), cert. denied, 389 So.2d 151 (Ala. 1980).
 "A material error or misstatement in the testimony of the witness for the prosecution may constitute ground for a new trial . . . But recantation by witnesses called on behalf of the prosecution does not necessarily entitle defendant to a new trial. The question of whether a new trial shall be granted on this ground depends on all of the circumstances of the case, including the testimony of the witnesses submitted on the motion for the new trial. Moreover, recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true." Henderson v. State, 136 Fla. 548, 185 So. 625, 630
(1939); Borgess v. State, 455 So.2d 488 (Fla.App. 1 Dist. 1984).
Further, "the courts, with their experience with witnesses, generally pay but little regard to the statements of recanting witnesses, and only in extraordinary cases will a new trial be allowed because of recanting statements." Wallace v. State,41 Ala. App. 65, 124 So.2d 110, cert. denied, 271 Ala. 701,124 So.2d 115 (1960); See 158 A.L.R. 1062-1063; Peterson v. State,426 So.2d 494 (Ala.Crim.App. 1982); cert. denied, 426 So.2d 494
(Ala. 1983). See also, State v. Scanlon, 499 P.2d 155 (Ariz. 1972); Best v. State, 418 N.E.2d 316 (Ind.App. 1981).
The general rule regarding the awarding of a new trial based on recanting witness is that, where independent evidence corroborates the testimony that a witness later seeks to recant, the grant of a new trial rests within the sound discretion of the trial judge. However, when a defendant is convicted solely on the testimony of the now recanting witness, it would be an abuse of discretion not to allow a new trial. See State v. Scanlon, supra; Commonwealth v. McCloughan,279 Pa. Super. 599, 421 A.2d 361 (Pa.Super. 1980); Best v. State, supra; Borgess v. State, supra; State v. Rogers, 703 S.W.2d 166
(Tenn.Cr.App. 1985); State v. York, 41 Wn. App. 538,704 P.2d 1252 (Wash.App. 1985).
Here, in denying the motion for new trial, the trial court found that the victim's testimony at trial was corroborated and that the appellant had made a confession to the crime. The victim may be able to recant his own testimony, but the fact remains that he cannot recant appellant's confession to this crime. In this cause, the trial judge was in the best position to evaluate the credibility of the child's conflicting stories, and we cannot conclude that he was required to find that the true version was the one told by the boy at the post trial hearing.
In view of the authorities hereinabove set out, the testimony elicited and the trial judge's findings, it is clear that the trial judge properly denied the motion for new trial on these grounds.
 II
Appellant further contends that the trial court erred in refusing to allow one Margie Stein, a psychotherapist, to testify at the motion for new trial hearing as to statements made to her by the victim in this cause concerning the act of sodomy.
Defense counsel sought to elicit the testimony in question during her direct examination of Mrs. Stein. The State objected to this testimony, citing hearsay testimony as grounds for this objection. The objection was sustained by the trial judge. The trial court was correct in sustaining the objection to the question in this cause. Defense counsel was, in fact, attempting to elicit an out-of-court statement made by the victim offered to prove the truth of the matter asserted. Appellant does not argue on appeal, *Page 956 
nor did he argue at trial, that the hearsay statement falls within any of the recognized exceptions to the hearsay rule. In view of this, and from our own examination of the exceptions to the hearsay rule, we hold that the trial judge was correct in this instance.
We have reviewed this record for errors which effect the substantial rights of the appellant and have found none therein.
Therefore, the judgment of the trial court is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.
 *Page 387