This is a capital murder case. The facts in this case are fully reported in the opinion of the Court of Criminal Appeals,510 So.2d 554 (Ala.Cr.App. 1986).
The petitioner, John W. Peoples, Jr., was convicted of capital murder in the deaths of Paul G. Franklin, Sr., his wife Judy C. Franklin, and their son Paul G. Franklin, Jr. Peoples was sentenced to death. The Court of Criminal Appeals affirmed his conviction and overruled his application for rehearing. We granted certiorari as a matter of right. Rule 39(c), A.R.App.P.
Petitioner presents fifteen issues for review, all of which were discussed by the Court of Criminal Appeals. We deem it sufficient to address specifically two of these issues, both of which involve the admission of evidence at trial and both of which are central to the appeal.
The first issue we discuss is based on petitioner's contention that his detention on July 11, 1983, by the Childersburg police amounted to an illegal arrest without probable cause. See Florida v. Royer, 460 U.S. 491,103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Consequently, petitioner asserts that any evidence flowing from his arrest was inadmissible at his trial. Wong Sun v. United States, 371 U.S. 471,83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Petitioner claims that the Corvette automobile, the bill of sale, photographs of the Corvette, photographs of blood stains found in the car, and articles of clothing found at his apartment pursuant to a consent to search were all products of an illegal arrest and should not have been admitted into evidence.
With regard to this issue, the Court of Criminal Appeals addressed each item of evidence claimed by petitioner to be inadmissible and properly recognized that "the admissibility of the fruits of the search of the car, as well as its seizure, and likewise the admissibility of the other items of evidence, is dependent upon the validity of the arrest." That court concluded as follows: "We find that there was probable cause for the arrest. We do not agree with the appellant that the arrest occurred when he was confronted in the store in Childersburg. Therefore, the above items of evidence were not inadmissible as fruit of the poisonous tree."
Petitioner insists that his initial detention at the drug store constituted an arrest under Alabama law. He citesGlass v. State, 424 So.2d 687, 689-90 (Ala.Crim.App. 1982), for its definition of "arrest": "An arrest consists in taking, under real or assumed authority, custody of another person for the purpose of holding or detaining him to answer a criminal charge or civil demand."
Captain Lewis Finn, a Childersburg police officer, testified that he went to Wesson's Drug Store on July 11, after receiving a call from the police chief, "[b]ecause there was suppose [sic] to be a car down there fitting the description that we were looking for." Captain Finn also testified as follows:
"Q. And you went down there?
"A. Yes, Sir.
"Q. And you saw this man, John Peoples?
"A. Yes.
"Q. And did you take anything from him? *Page 576 
"A. No.
". . . .
"Q. What did you do?
 "A. I walked in the drug store and asked him if that was his car out there. He said it was and I told him to come on that I wanted to talk to him about it.
"Q. . . . Where did you go?
"A. We went outside the door.
"Q. Did you take anything from him then?
"A. No, sir.
 "Q. Did you direct him to go to the police station?
 "A. I was going to take him and he said he wanted to drive the car, so we let him drive his own car.
"Q. And you followed him?
"A. Right.
"Q. He parked the car when he got down there?
"A. Right."
The Childersburg police chief, Ira Finn, testified that petitioner was not under arrest at the time he was brought from the drug store to the police station. According to Chief Finn, petitioner was free to go at that time, but did not say he wanted to leave. Chief Finn told petitioner that he was not arrested.
Based on the unusual circumstances of this case, we agree with the Court of Criminal Appeals that the arrest did not occur when petitioner was confronted in the store in Childersburg. As we will discuss, we find that the Childersburg police were justified in their stop of petitioner to ask him questions and to detain him briefly to obtain more information.
In Terry v. Ohio, 392 U.S. 1, at 22, 88 S.Ct. 1868, at 1880 (1968), the United States Supreme Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." In making such an investigatory stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, supra, at 21, 88 S.Ct. at 1879.
At the time petitioner was approached in the store, Childersburg police knew that a man was at the drug store attempting to sell a red 1968 Corvette with a tag number and vehicle identification number identical to that of a missing car listed with the National Crime Information Center (NCIC). They also knew that a car matching this description had been publicized in newspaper reports concerning a missing family in an adjoining county. Petitioner claims this information was insufficient to warrant the action taken by the Childersburg police.
The United States Supreme Court, in United States v. Hensley,469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), considered the issue of an investigatory stop of a person by officers of one police department in reliance on another police department's bulletin that the person was wanted for investigation of a felony. After determining that "[t]he same interests that weigh in favor of permitting police to make aTerry stop to investigate a past crime . . . support permitting police in other jurisdictions to rely on flyers or bulletins in making stops to investigate past crimes," the Court concluded: "[I]f a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, . . . to pose questions to the person, or to detain the person briefly while attempting to obtain further information."Hensley, 469 U.S. at 232, 105 S.Ct. at 682. The Hensley Court held that "[a]ssuming the police make a Terry stop in objective reliance on a flyer or bulletin, . . . evidence uncovered in the course of the stop is admissible if the police who issued
the flyer or bulletin possessed a reasonable suspicion justifying a stop, United States v. Robinson, [536 F.2d 1298
(9th Cir. 1976)], and if the stop that in fact occurred was not significantly more intrusive than would have been permitted *Page 577 
the issuing department." Hensley, 469 U.S. at 233,105 S.Ct. at 683.
In the present case, the Childersburg police had received an NCIC report concerning a red Corvette that had been listed as missing by St. Clair County authorities. Their reliance on this report was proper. In Cotton v. State, 481 So.2d 413, 415
(Ala.Crim.App. 1985), the Alabama Court of Criminal Appeals reiterated that "information received by officers over the radio in regard to a suspect constitutes sufficient cause to make an investigatory stop to question the suspect about suspected criminal activity. Kemp v. State, 434 So.2d 298
(Ala.Crim.App. 1983); Crawley v. State, 440 So.2d 1148
(Ala.Cr.App. 1983)." An officer may rely on a police dispatch in stopping a vehicle. Pickett v. State, 417 So.2d 589
(Ala.Crim.App. 1982). A report from the NCIC relayed over police radio that an automobile was stolen, when in fact the NCIC report was erroneous, has been held to support a search and seizure of the automobile by officers in reliance on the report. Daniels v.State, 290 Ala. 316, 276 So.2d 441 (1973).
According to Hensley, supra, the propriety of the stop made by the Childersburg police in reliance on the NCIC report depends on whether the issuing officers in St. Clair County possessed a reasonable suspicion justifying the stop. We find that at the time of petitioner's detention in Childersburg on July 11, the St. Clair County officials investigating the disappearance of the Franklin family and their automobile possessed a reasonable suspicion, based on specific and articulable facts, that petitioner was involved in a completed crime.
We must also determine whether the stop and detention were no more intrusive "than would have been permitted the issuing department." Hensley, supra, 469 U.S. at 233, 105 S.Ct. at 683. We are of the opinion that the detention of petitioner at the Childersburg police station was justified under the circumstances. The Childersburg police had located an automobile that had been particularly described and that was wanted by authorities in St. Clair County. When petitioner told the officers that this car belonged to him, he became the legitimate subject of investigation. See United States v.Longmire, 761 F.2d 411 (7th Cir. 1985). At that point, it was appropriate to relocate the investigation to the police station, as good police work in this instance demanded that the officers have an extended conversation with petitioner concerning the particular car that he was attempting to sell. The detention that occurred was no more intrusive than would have been a detention allowed the St. Clair County authorities.
Having determined that the detention of petitioner was a valid investigatory stop, we find that the bill of sale produced by petitioner during this stop was admissible. Further, the facts which were uncovered as a result of information contained in the bill of sale supplied probable cause to arrest petitioner for theft of the automobile by deception. The evidence obtained as a result of the valid investigatory stop and the subsequent arrest of petitioner based on probable cause was properly admitted into evidence.
The second issue we address is the claim by petitioner that the evidence from the scene where the bodies of the Franklin family were found should not have been admitted into evidence. Petitioner urges that the statement which he made on July 13, 1983, resulting in the discovery of the bodies, was not voluntary, but was made as a result of a promise by the State that was conveyed to petitioner through his attorney. Regardless of whether any such promise or agreement was made, we find that the evidence from the scene where the bodies were found was admissible. We agree with the determination of the Court of Criminal Appeals that Timothy Gooden independently led police to the location where the bodies had been found two days earlier, based on petitioner's statement. This evidence would have been discovered through Timothy Gooden as an independent source. See Segura v. United States, 468 U.S. 796,104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). Petitioner's contention that Gooden cannot be an independent source because his name was revealed as a result of an *Page 578 
illegal arrest has no merit in light of our determination that petitioner's detention and arrest were valid. Thus, the evidence from the site where the bodies were located was properly admitted.
We have carefully reviewed the remaining issues raised by petitioner that are not directly addressed by our opinion. Having considered the record, the briefs, and the oral argument in this case, and having considered the propriety of the death sentence pursuant to the requirements of Ala. Code 1975, §13A-5-53(a), and Beck v. State, 396 So.2d 645 (Ala. 1980), we find no errors adversely affecting the rights of petitioner. The judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.