John W. Peoples, Jr. appeals from the denial of his petition seeking post-conviction relief under Rule 20, Alabama Temporary Rules of Criminal Procedure. This petition was denied by the trial court after the appointment of counsel and the conducting of a full evidentiary hearing thereon by the trial judge.
On the night of Wednesday, July 6, 1983, Paul G. Franklin, Sr., Judy C. Franklin and Paul G. Franklin, Jr., disappeared from their home. On August 3, 1983, in a five-count capital murder indictment, John W. Peoples, Jr., was charged with the capital murder of two or more persons. The appellant was found guilty as charged in the indictment and the cause was then appealed to this court, which affirmed same in an opinion reported as Peoples v. State, 510 So.2d 554 (Ala.Crim.App. 1986). The cause was then taken to the Supreme Court of Alabama which affirmed this court in an opinion reported as Peoples v.State, 510 So.2d 574 (Ala. 1987). Peoples's attorneys then filed a petition for writ of certiorari in the United States Supreme Court which denied that petition on November 2, 1987,Peoples v. Alabama, 484 U.S. 933, 108 S.Ct. 307, 98 L.Ed.2d 266
(1987).
Peoples then filed his petition seeking post-conviction relief in the Circuit Court of Talladega County. A full evidentiary hearing, *Page 1179 
directly on the merits of the issues presented, was conducted with appointed, experienced counsel to assist him. There were some thirteen issues presented to the trial court which has made express written findings. These findings are herein adopted as Appendix A to this opinion and approved in this opinion.
The appellant in the post-conviction proceeding reasserted some ten issues, which were fully covered and dealt with by this court in its original opinion reported as Peoples v.State, 510 So.2d 554 (Ala.Crim.App. 1986).
The appellant, in addition to the matters which were set forth in the original trial, sought to assert that his trial counsel was inadequate and ineffective as a matter of law and, secondly, that trial counsel failed to properly raise the issues on original direct appeal and that he, therefore, was not effectively represented on appeal of the original conviction.
We shall cover these issues in this opinion. This court, as required by Rule 45A, A.R.A.P., has carefully reviewed the record in this cause. We have also carefully considered each allegation as set forth in the Rule 20 petition, seeking post-conviction relief and, also, those which were heretofore asserted in this court and in the Supreme Court of Alabama.
 I
We completely adhere to the views heretofore expressed in the opinion of this court reported on original appeal asPeoples v. State, 510 So.2d 554 (Ala.Crim.App.) and those expressed by the Supreme Court of Alabama in its opinion reported as Peoples v. State, 510 So.2d 574 (Ala. 1987). It is noted that the Supreme Court of the United States denied certiorari, 484 U.S. 933, 108 S.Ct. 307, 98 L.Ed.2d 266 (1988).
We have also carefully considered appellant's assertions with reference to his representation by counsel. We are clear to the conclusion that the appellant failed to make out a case of either inadequate or ineffective representation by counsel at trial or on original appeal. The appellant, in his proof, wholly failed to satisfy either prong as set forth in the opinion of the Supreme Court of the United States inStrickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984). See also Baldwin v. State, 539 So.2d 1103
(Ala.Crim.App. 1988), cert denied, 539 So.2d 1103 (Ala. 1989); Ex parte Baldwin, 456 So.2d 129 (Ala. 1984).
We have carefully reviewed this record again, and the original trial record, with reference to appellant's contentions concerning the ineffective assistance of counsel on his first appeal as a matter of right in accordance withEvitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821
(1985). See also Harrell v. State, 526 So.2d 646 (1988), cert.denied, 526 So.2d 646 (Ala. 1988).
Our own independent search of the record in this cause leads us to the conclusion that the circuit court's findings of fact and conclusions of law, attached as Appendix A of this opinion, which we herein affirm, correctly determine the issues in the trial court. Our independent examination of the proceedings convinces this court that those findings and conclusions are correct and they are fully supported by the record in this cause. See Weeks v. State, 456 So.2d 395 (Ala.Crim.App. 1983), aff'd Ex parte Weeks, 456 So.2d 404 (Ala. 1984), cert.denied, Weeks v. Alabama, 471 U.S. 1030, 105 S.Ct. 2051,85 L.Ed.2d 324 (1985). See also, Weeks v. State, [Ms. December 1, 1989, 5 Div. 484] (Ala.Cr.App. 1989).
 II
The other principal issue dealt with at the Rule 20 petition hearing was Peoples's claim under the theory of newly discovered evidence in the form of Timothy Gooden's recantation of his trial testimony, that he was now entitled to a new trial. Indeed, Gooden did recant at the Rule 20 hearing and state that his trial testimony was not correct and that he was now testifying as to the truth. Two of Peoples's other witnesses, however, contradicted Gooden's testimony at the Rule 20 hearing. Similarly, the State's witnesses completely *Page 1180 
contradicted that and supported the original trial testimony.
It should be noted that Gooden recanted after he had pleaded guilty and received a life sentence.
The trial court determined that Gooden's recanted testimony was not credible and that he should not be believed.
We agree with this position and determine that, in fact, the appellant wholly failed to prove his theory of "knowing use of perjured testimony." To the contrary, the State's testimony was accurate and truthful and has been so determined by the trial court and we do affirm that determination.
Moreover, in an abundance of precaution, we have carefully reviewed each allegation and assertion made by Peoples. We have carefully considered the work of his counsel on this appeal. We find that this appellant was fully and fairly represented, not only at original trial and on original appeal, but also at the Rule 20 petition hearing and in his appeal of that proceeding which is presently before this court. We commend the attorneys involved as representing the best traditions of the bar of the State of Alabama. The appellant's contention as to inadequate or ineffective representation is utterly without merit as matter of fact and law.
We find no error in this appeal. We have carefully reviewed each allegation and the legal arguments offered in support thereof.
For the reasons stated herein, the judgment of the Circuit Court of Talladega County denying the petition under Rule 20 seeking post-conviction relief is due to be and the same is, hereby, affirmed.
AFFIRMED.
All the Judges concur.
APPENDIX A
 In the Circuit Court of Talladega County, Alabama
Civil Action No: CV-88-025
John W. Peoples, Jr., Petitioner,
vs.
State of Alabama, Respondent.
 MEMORANDUM OPINION
Based on the testimony and exhibits presented at the hearings held on December 13, 1988 and December 22, 1988, the Court enters the following findings of fact and conclusions of law.
 I. CLAIMS BARRED FROM RELIEF
Peoples raised eleven claims in his Rule 20 petition. Eight of these claims are barred from review.
 A. Claims Which Were Raised And Decided On Appeal
Seven of the claims raised in the Rule 20 petition are barred from review, at least in part,[1] because they were raised and decided on appeal from Peoples's conviction and death sentence. Temporary Rule 20.2(a)(4) of the Alabama Rules of Criminal Procedure provides as follows:
 (a) Preclusion of Grounds. A petitioner will not be given relief under this rule based upon any ground:
* * * * * *
 (4) Which was raised or addressed on appeal or in any previous collateral proceeding;
* * * * * *
The following claims in the Rule 20 petition were raised and addressed on appeal:
 Claim One [in part]: July 19, 1983 Confession — Sixth and Fourth Amendment Challenges, paragraph 12(A)(1) and 12(A)(4)(b) of the Rule 20 petition. *Page 1181 
 Claim Two: Search of the Victim's Car and Peoples's Apartment, paragraph 12(A)(2) of the Rule 20 petition.
 Claim Three: The July 11, 1983 Stop and Admissibility of Evidence Obtained After the Stop, paragraph 12(A)(3)(a) of the Rule 20 petition.
 Claim Four: The July 12, 1983 Arrest and Admissibility of the Boots Seized After Arrest, paragraph 12(A)(3)(b) of the Rule 20 petition.
 Claim Five: Admissibility of Evidence from the Murder Scene, paragraph 12(A)(4)(a) of the Rule 20 petition.
 Claim Nine: Prosecution Cross Examination of Punishment Stage Character Witnesses, paragraph 12(A)(8) of the Rule 20 petition.
 Claim Ten: Defense Challenges for Cause of Jurors Allegedly Predisposed to Recommending a Death Sentence, paragraph 12(A)(9) of the Rule 20 petition.
See, Peoples v. State, 510 So.2d 554 (Ala.Cr.App. 1986), aff'd,510 So.2d 574 (Ala. 1987). Because these claims have already been rejected on appeal, Peoples cannot obtain relief on them here.
 B. Claims Not Raised At Trial Or On Appeal
Two of the claims raised in the Rule 20 petition are barred from review, at least in part, because they were not raised at trial or on appeal but could have been. Temporary Rule 20.2(a)(3) (5) of the Alabama Rules of Criminal Procedure provides as follows:
 (a) Preclusion of Grounds. A petitioner will not be given relief under this rule based upon any ground:
* * * * * *
 (3) Which could have been but was not raised at trial, unless the ground for relief arises under Rule 20.1(b); or
* * * * * *
 (5) Which could have been but was not raised on appeal, unless the ground for relief arises under Rule 20.1(b).
The following claims could have been but were not raised at trial or on direct appeal:
 Claim One [in part]: July 19, 1983 Confession — Voluntariness, paragraph 12(A)(1) and 12(A)(4)(b) of the Rule 20 petition.
 Claim Eight: Election Among Counts, paragraph 12(A)(7) of the Rule 20 petition.
Because each of these claims could have been but was not raised, by objection or motion, at trial and then on appeal, Peoples cannot obtain relief on any of these claims.
 II. INEFFECTIVE ASSISTANCE OF COUNSEL
In paragraphs 12(A)(6)(a) and (b), Peoples alleged that the lawyer who represented him before his trial, Ray Robbins, rendered ineffective assistance. First, Peoples alleged that Robbins was ineffective in failing to obtain a written agreement concerning a polygraph examination for Peoples. Second, he alleged that his July 19, 1983 confession was taken in violation of Robbins's instruction to the police and that he was thus denied effective assistance of counsel as to that confession.
As to Peoples's first allegation, an evidentiary hearing was held at trial on Peoples's motion to quash the indictment based on the alleged agreement. (TR.[2] Vol. III, pp. 2-144). This Court entered an order denying Peoples's motion to dismiss. (TR. Vol. I, 103-109) In that order, the Court found that no agreement was actually reached between the prosecutor and Peoples because the parties did not agree on the specific terms of an agreement. (TR. Vol. I, p. 108) The Court further found that to the extent there was an agreement, one of the terms was that Peoples would take a polygraph test and that the test would establish that Peoples was not involved in murdering the Franklins. (TR. Vol. I, p. 108) The Court found that, even if there had been an agreement, Peoples *Page 1182 
breached it by refusing to take the polygraph test. (TR. Vol. I, p. 108)
At the evidentiary hearing on the Rule 20 petition, both Peoples and Robbins testified. The Court, having considered their testimony and demeanor along with the testimony presented at the hearing on People's motion to quash, finds that Robbins was a credible witness and that Peoples was not a credible witness.
Ray Robbins was admitted to practice in 1975. He had represented Peoples before on some civil matters and was contacted after Peoples was arrested in Childersburg. Robbins went to see Peoples in Pell City.
In Pell City, Robbins met with Peoples, who said he was innocent and brought up taking a polygraph test to clear himself. Robbins went over the procedures involved in a polygraph test and stressed to Peoples that he should not take the test unless he was innocent.
Based on Robbins's understanding of the agreement concerning a polygraph examination, that agreement was being honored until Peoples refused to take the polygraph test in Gadsden. Robbins understood that the Talladega County district attorney, Robert Rumsey, was upset about the agreement but was willing to honor it. Robbins did not think he needed a written agreement at the time the agreement was discussed with the St. Clair district attorney, because he had no reason to believe that the district attorney would not honor the agreement and there were a number of witnesses present when the agreement was discussed.
Peoples testified that Robbins told him that an agreement had been worked out and that, if Peoples gave a full statement, took the authorities to the bodies, and took a lie detector test, he would not be prosecuted. Peoples said that he told Robbins that the Franklins were dead before he gave a statement.
Peoples testified that he was taken to Gadsden early in the morning for a polygraph test. He said that he waited at least three hours before he saw the polygraph examiner. Peoples said that before he saw the examiner, Ray Robbins told him that there was no agreement. Peoples said that he refused to take the polygraph test because he had been told there was no agreement and because there was no way the test could have been done right. Peoples admitted that he refused to take the polygraph examination.
Based on the testimony hearing at trial on Peoples's motion to quash and the Rule 20 hearing, the Court finds that Robbins was not ineffective. To make out a claim of ineffective assistance of counsel, a defendant must prove that his lawyer's performance was outside the broad range of professionally competent assistance and that there was a reasonable probability that but for his lawyer's action or omission, the outcome of his trial would have been different. Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984).
Robbins's performance was not deficient when he trusted a district attorney to honor his verbal agreement. To the extent there was an agreement, it was not breached by the State but by Peoples. A written agreement, if one had been obtained, would have been violated by Peoples's refusal to take the polygraph test. Peoples's claim that Robbins told him the agreement was off before he met the polygraph examiner is contradicted by Robbins's testimony, and the motion hearing testimony, and is not credible. Clearly, to the extent that an agreement existed it was not violated until Peoples refused to take the test.
Further, Peoples was not prejudiced by the lack of a written agreement. He testified that he knew that taking a polygraph was part of the agreement and that he refused to take the test. He was solely responsible for the breach of that agreement. Peoples did not refuse to take the test because he was not sure of the terms of the agreement. From all of the evidence, Peoples refused to take the polygraph test because he was guilty of the murder of the Franklins and knew the test would prove it. There is no reasonable probability that, but for the absence of a *Page 1183 
written agreement, the outcome of Peoples's trial would have been different.
As to Peoples's second allegation of ineffective assistance of counsel, this Court addressed the circumstances surrounding Peoples's July 19, 1983 confession in its order denying Peoples's motion to suppress. (TR. Vol. I, pp. 167-175) In its order, the Court found that Peoples initiated the contact with Sheriff Brown which led to his July 19, 1983 confession. (TR. Vol. I, p. 171) The Court found that Sheriff Brown offered to contact Peoples's lawyer but that Peoples refused. (TR. Vol. I, p. 171) The Court found that Peoples voluntarily confessed after waiving the presence of an attorney. (TR. Vol. I, p. 172)
The Court of Criminal Appeals affirmed this Court's finding that Peoples waived his right to counsel before confessing.Peoples v. State, 510 So.2d 554, 570 (Ala.Cr.App. 1986). Because Peoples initiated the contact with Sheriff Brown which led to his confession and waived the presence of Robbins when he confessed on July 19, 1983, there is no basis for his contention that Robbins rendered ineffective assistance.
 III. NEWLY DISCOVERED EVIDENCE
In paragraph 12(E) of the Rule 20 petition, Peoples claimed that newly discovered evidence existed, in the form of Timothy Gooden's recantation of his trial testimony, which entitled him to a new trial. At the Rule 20 hearing, Peoples called Gooden, Gooden's father, and George Sims as witnesses. Respondents called Robert Rumsey, C.J. Hallmark, and Jerry Studdard. Based on all the testimony and the demeanor of the witnesses, the Court finds that Gooden was not a credible witness at the Rule 20 hearing. Peoples's remaining witnesses did not support his claim and one, George Sims, contradicted Gooden's testimony. The Court finds that Sims and the State's witnesses were credible.
At the Rule 20 hearing, Gooden recanted his trial testimony and claimed that he had been forced to testify against Peoples. Gooden testified that, while he took Peoples to the Franklin home on July 6, 1983, he left Peoples there and did not go in the house. Gooden denied having any knowledge of the Franklins' murder. Gooden denied going with Peoples and the Franklins to the murder scene.
Gooden claimed that he testified falsely at Peoples's trial. He explained that he did so because he had been threatened by District Attorney Rumsey, Sheriff Studdard, and police officers, including C.J. Hallmark. He said that Rumsey threatened to prosecute him for capital murder if he did not cooperate. He said that Studdard, Hallmark, and others threatened to physically abuse him. Gooden claimed that he was afraid he would be beaten because he had been beaten by deputies, including Hallmark, in 1978.
Gooden admitted giving two statements, Petitioner's Exhibits 2 and 3, which conformed to his Rule 20 testimony, but denied giving two other statements, Petitioner's Exhibits 4 and 5, which incriminated him along with Peoples. Gooden testified that after his arrest he was taken to the Franklins' home in St. Clair County and that Studdard and Rumsey dictated a statement for his signature. Gooden also claimed that he did not take the authorities to the murder scene but rather was shown the scene by Studdard and Rumsey. Gooden said that Rumsey and George Sims, who was Gooden's lawyer, told him what to say at Peoples's trial. Gooden said that he had told Sims he was innocent but that Sims had not believed him.
As evidenced by Petitioner's Exhibit 1, Gooden pleaded guilty to robbery of the Franklins and was sentenced to life. At the time of the plea, Gooden was informed that his agreement with the State was conditioned on his truthful testimony and continued cooperation with the State in any future proceedings. The Court found that Gooden's plea was voluntary. Gooden later appealed his plea and it was affirmed.
George Sims was appointed to represent Gooden on the Franklin murders. When he first talked to Gooden, Gooden claimed to be innocent but Gooden later admitted his *Page 1184 
involvement in the Franklin murders. Gooden never told Sims that he had been threatened or abused. Based on his twelve years of practice, Sims did not find it unusual for a defendant to change his story from an initial protestation of innocence to an admission of guilt.
Sims and Rumsey negotiated a plea agreement in Gooden's case the night before Gooden testified. Rumsey told Gooden that he would be prosecuted for capital murder if he did not tell the truth. Sims did not tell Gooden what to say in his testimony and neither did Rumsey.
Gooden's father, Millard Gooden, testified that in 1979 he was called to the Talladega County Jail to pick up his son. He testified that his son had been beaten and identified photographs of his son taken at that time. Mr. Gooden had no knowledge of how or by whom his son was beaten that did not come from his son.
C.J. Hallmark was an investigator with the Talladega Sheriff's Office in 1983 and was involved in the investigation of the Franklin murders. Hallmark never threatened or abused Gooden and no one in Hallmark's presence ever threatened or abused Gooden. Hallmark never told Gooden that they ought to take him out and shoot him. Hallmark did not threaten to take Gooden out and beat him. Contrary to Gooden's Rule 20 testimony, Hallmark was not present when a statement, Petitioner's Exhibit No. 2, was given by Gooden on July 11, 1983.
Hallmark was present on July 15, 1983 when Gooden gave a statement, Petitioner's Exhibit 4. Hallmark was also present when Gooden gave his July 21, 1983 statement, Petitioner's Exhibit 5. Neither Hallmark nor anyone in his presence threatened Gooden to make him give those statements. Hallmark was a deputy sheriff in 1978 and 1979. He did not beat Gooden then or on any other occasion.
Robert Rumsey is, and was in 1983, the District Attorney for Talladega County, Alabama. He prosecuted Peoples for the Franklin murders. As part of his involvement in that case, Rumsey interviewed Gooden. His purpose in interviewing Gooden was to check Peoples's version of the events of July 6, 1983 against Gooden's, in the hope of contradicting Peoples. During the interview, Gooden volunteered that Peoples did not have a .22 rifle in his hand when he went in the Franklins' home. At that point, Rumsey knew that the Franklins' murder had involved a .22 rifle but no one outside the investigation could have known, except a person or persons who participated in the murder of the Franklins. Rumsey continued to question Gooden, who ultimately admitted his involvement, see Petitioner's Exhibit 4, and took Rumsey, Studdard, and others to the scene where the Franklins' bodies had been found.
Rumsey was present and participated in obtaining Gooden's July 15, 1983 statement. Neither Rumsey nor anyone in his presence threatened Gooden. Gooden later told Rumsey that he had not learned the location where the Franklins' bodies had been found from the news and that no one had told him where the bodies had been found before he took Rumsey there. Rumsey did not dictate Gooden's July 21, 1983 statement, Petitioner's Exhibit 5, or any other statement. He has never threatened Gooden and no one in his presence has ever threatened Gooden.
Rumsey entered into a plea agreement with Gooden after negotiations with Gooden's lawyer, George Sims. The agreement was reached the night before Gooden testified and was conditioned on Gooden testifying truthfully. The agreement also included a requirement that Gooden continue to testify truthfully in the future, if necessary, and provided that if Gooden did not testify truthfully then he would be prosecuted for capital murder. See, Petitioner's Exhibit 1. Rumsey did not tell Gooden what to testify to beyond requiring him to tell the truth.
After Peoples's Rule 20 petition was filed, Rumsey met with Gooden in the presence of George Sims. At that time Gooden reaffirmed the truth of his trial testimony.
Jerry Studdard is, and was in 1983, the Sheriff of Talladega County, Alabama. He was involved in the investigation of the *Page 1185 
Franklin murders. Studdard was present when Gooden was interviewed on July 14, 1983 in the district attorney's office. He was present when Gooden gave his statement, Petitioner's Exhibit 4, early in the morning on July 15, 1983. Neither he nor anyone in his presence threatened or abused Gooden. Studdard was also present when Gooden took Rumsey to the scene where the Franklins' bodies were found. Neither Studdard nor anyone in his presence told Gooden where the bodies had been found. Gooden told them where to go and when to stop.
Studdard was present when Gooden gave his July 21, 1983 statement, Petitioner's Exhibit 5. Studdard did not dictate this or any other statement. Studdard never threatened or abused Gooden. No one in his presence ever threatened or abused Gooden.
Based on the testimony and exhibits introduced at the Rule 20 hearing, Peoples has failed to make out a claim of newly discovered evidence. Gooden's recantation of his trial testimony is not sufficient to warrant a new trial. Gooden's Rule 20 testimony is contradicted by credible testimony and is false. Recanting testimony is inherently unreliable and has been recognized as being untrustworthy. Wadsworth v. State,507 So.2d 572, 575 (Ala.Cr.App. 1987); Robinett v. State,494 So.2d 952, 955 (Ala.Cr.App.), cert. denied, No. 85-1399 (Ala. 1986);Peterson v. State, 426 So.2d 494, 497 (Ala.Cr.App. 1982), cert.denied, No. 82-361 (Ala. 1983).
Gooden's explanation that he lied at trial because he was threatened was shown to be false. District Attorney Rumsey, Sheriff Studdard and Deputy Hallmark were all credible witnesses and each testified that neither they nor anyone in their presence threatened or abused Gooden. Gooden's claim that he had reason to fear abuse in 1983 because he was beaten in 1978 or 1979 was contradicted by Hallmark and by a hospital record in which he reported that he was assaulted in the county jail without mentioning that he was assaulted by the police, Petitioner's Exhibit 11.
Gooden's Rule 20 testimony was contradicted in additional ways. First, Gooden's denial of his July 15, 1983 and July 21, 1983 statements was shown to be false. Rumsey and Studdard were present when Gooden gave the July 15, 1983 statement and identified it as his statement. Hallmark was present when Gooden gave his July 21, 1983 statement and identified it as his statement.
Second, Gooden's testimony that he did not take the authorities to the murder scene was shown to be false. Rumsey and Studdard were taken to the scene by Gooden and did not tell him beforehand where the bodies had been found.
Third, Gooden's claim that Rumsey and Studdard dictated a statement for his signature was shown to be false. Rumsey and Studdard denied dictating any such statement. Their testimony is credible and Gooden's Rule 20 testimony is not.
Fourth, Gooden's claim that he was coerced into pleading guilty and testifying was shown to be false. Rumsey and Sims testified that they negotiated a plea agreement predicated on Gooden's truthful testimony and that Gooden was not told what to say at trial. Further, as shown by Petitioner's Exhibit 1, Gooden voluntarily pleaded guilty.
Fifth, after the Rule 20 petition was filed, Gooden reaffirmed the truth of his trial testimony to District Attorney Rumsey and George Sims.
Based on the above, it is clear that Gooden's Rule 20 testimony was false and his trial testimony was true. Because Gooden's recantation of his trial testimony is clearly false, Peoples has failed to prove the existence of newly discovered evidence and is not entitled to relief.
 IV. DISCLOSURE OF EXCULPATORY EVIDENCE
In paragraphs 12(A)(5)(a) and (b), Peoples alleged that the prosecution failed to disclose exculpatory evidence. First, Peoples alleged that there was a witness who had seen Gooden in Talladega County at the *Page 1186 
time of the Franklin murders and that this witness's "alibi" for Gooden impeached his trial testimony. Second, Peoples alleged that the prosecution knowingly presented evidence it knew to be false, Gooden's testimony. Peoples is not entitled to relief on either of these allegations.
As to his first allegation, Peoples did not prove that such an "alibi" witness existed. Peoples also failed to prove that the prosecution knew that such a witness existed. Peoples has failed to prove that the prosecution withheld material exculpatory evidence because he did not prove that there was any evidence to be withheld.
As to his second allegation, that the prosecution, in calling Gooden, knowingly presented false testimony, Peoples did not prove that any false testimony was presented. As noted above, Gooden's trial testimony was the truth and Gooden's recantation of that testimony is false.
Peoples is not entitled to relief on this claim. The prosecution did not withhold exculpatory evidence or knowingly present false evidence.
 V. CONCLUSION
As shown by the findings above, Peoples is not entitled to relief on any of the claims in his petition. An Order denying relief for the reasons stated herein will be entered.
DONE this the 7th day of March, 1989.
 /s/ Jerry L. Fielding --------------------- JERRY L. FIELDING Circuit Judge Twenty-Ninth Judicial Circuit of Alabama
[1] Peoples's first claim concerns the admissibility of his July 19, 1983 confession. As to this confession, Peoples raised the two challenges to the confession that he raised at trial and also raised a new challenge, that it was coerced. The entire claim is barred from review because part was raised on appeal and the other part, could have been but was not raised at trial or on appeal, see p. 3, below.
[2] "TR." refers to pages in the 15 volume transcript of Peoples's 1983 capital murder trial.