

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00123-CV

**IN THE MATTER OF T.N.H.**

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-JUV-01194
Honorable Laura Parker, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:       Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  March 13, 2013

AFFIRMED

Appellant T.N.H. appeals the trial court's adjudication that he engaged in delinquent conduct by committing aggravated robbery and his determinate sentence of eight years. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In the afternoon on January 13, 2011, Jose Rodriguez and Paul Medellin were walking with three other friends to New Guilbeau Park to play basketball. Rodriguez and Medellin, fifteen and sixteen years old respectively, had been released early from high school due to the final exam schedule. They both testified they were released from school between 11:00 a.m. and 12:30 p.m. Medellin stated they went to play basketball at about 2:00 or 2:30 p.m. As Rodriguez and Medellin were walking about 30 feet behind the rest of the group, two older

teenagers ran up behind them and demanded to know whether they "had anything." Medellin stated they asked whether they had any "money or weed." They appeared to be about seventeen or eighteen years old. Neither Rodriguez nor Medellin knew them. The taller individual started going through Medellin's backpack without his permission and took his sweats. The shorter individual took the headphones that Rodriguez had around his neck and, when Rodriguez pulled away, he pointed a handgun at Rodriguez's chest from approximately two feet away; the gun was partially covered by a cloth, but Rodriguez could see it was an automatic handgun. The taller individual then came over and took Rodriguez's iPod and cell phone from his pockets. As the robbers walked away, Rodriguez saw the taller individual give Rodriguez's cell phone to the shorter one. Rodriguez and Medellin informed their friends that they had just been robbed at gunpoint. They went to the home of a friend whose step-father was a policeman, and he called in the robbery.

During the next two weeks, Rodriguez discussed the robbery at school and described the person who held the gun on him to see if anyone knew him. He described the robber as short with a mole under his eye and a tattoo on his hand. A classmate overheard the description and said it sounded like a student named "T***." Rodriguez told his sister Denise, who then found a photo of "T***" on Facebook and showed it to Rodriguez; he immediately recognized it as the person who pointed the gun at him. Rodriguez's mother called the investigating detective and provided him with the possible suspect's information. The detective obtained a school photo of "T***," identified as T.N.H., and presented it as part of a 6-photo lineup to Rodriguez and Medellin. Rodriguez picked out the photo of T.N.H. as the person who held the gun on him; Medellin was unable to make an identification from the same photo lineup.

An original petition was filed alleging that T.N.H., sixteen years old at the time, had engaged in delinquent conduct by committing the felony offense of aggravated robbery and

seeking a determinate sentence. TEX. PENAL CODE ANN. § 29.03 (West 2011); TEX. FAM. CODE ANN. § 53.045(a)(7) (West Supp. 2012). T.N.H. waived his right to a jury and proceeded to an adjudication hearing before the trial court. Rodriguez testified to the events of the robbery as stated above and identified T.N.H. in court as the shorter individual who pointed the gun at him during the robbery. Rodriguez confirmed that the person in court (T.N.H.) was the same person he picked out of the photo lineup and stated he was certain of his identification. Medellin gave the same version of events as Rodriguez. Medellin testified that Detective Van Geffen showed him a photo lineup but stated he was unable to identify any of the photos as the people who robbed them. At trial, Medellin was unable to identify T.N.H. as one of the robbers. Medellin testified that during the robbery he focused on the gun, not on what the two individuals looked like, and that he saw the gun even though it was partially wrapped in some cloth.

Detective Russ Van Geffen testified that he investigated the robbery. He received a phone call from Rodriguez's mother about a possible suspect identified by Denise Rodriguez and he determined the suspect, T.N.H., was enrolled in school. He contacted the Northside Independent School District (NISD) school police and they created a photo lineup of six photographs which he showed to Rodriguez and Medellin; Rodriguez identified T.N.H. as the robber who held the gun on him. Medellin also viewed the lineup, but was unable to make an identification.

During the defense case, Martha Fernandez, an assistant principal in charge of attendance at Taft High School, testified concerning T.N.H.'s attendance records that she had obtained from Holmes High School, where T.N.H. was enrolled on the day of the robbery, January 13, 2011.[1] That day was an NISD exam day and the record shows T.N.H. was present for his third period exam from 8:50 a.m. to 10:25 a.m. The next period from 10:35 a.m. to 12:10 p.m. was

---

[1] T.N.H. had subsequently transferred to Taft High School.

scheduled for the fifth period exam; T.N.H.'s fifth period class was his lunch period. No attendance is taken during lunch. The regular exam-day lunch period was from 12:10 p.m. to 12:30 p.m. and, thereafter, the students were released for the day; the buses started running at 12:30 p.m. On exam days, the students were able to pick up a sack lunch.

T.N.H. also called Lisa Hahne, an assistant principal who oversaw all the attendance records at Holmes High School, who testified that on exam days students like T.N.H. who have fifth period lunch are allowed to leave at 10:25 a.m. after their third period exam; a sack lunch is available in the school cafeteria. The school does not keep attendance records for fifth period lunch. She had no way to confirm whether T.N.H. stayed at school after 10:25 a.m., nor whether he rode the bus on January 13, 2011. She stated that T.N.H. could not have ridden the school bus until 12:30 p.m., but agreed there are many city buses that run near the school or he could have gotten a ride with someone.

Finally, T.N.H. testified that on January 13, 2011, he rode the bus to Holmes High School in the morning, took his third period exam, had lunch in the cafeteria during fifth period, waited around for the school buses, rode the bus home, arrived home between 1:10 p.m. and 1:20 p.m., and stayed at home. He testified that students are not allowed to leave campus early unless they have a parent note and he did not have a note that day. T.N.H. stated he rides the bus for 30 minutes to and from school every day. He agreed there is a city bus stop near the school. On cross-examination, he admitted that he would sometimes leave campus without permission, but stated that on exam days the security was extra tight, with the school police officer and teachers blocking the exits the whole time. T.N.H. testified he knew nothing about the robbery on January 13, 2011 and did not have a gun. He stated he had never been to the basketball park

where the robbery occurred. He admitted practicing for a quinceañera at a house near the park, but only on Fridays from December until the end of January 2011.[2]

At the conclusion of the adjudication hearing, the court found the allegation of delinquent conduct to be "true" and supported by the evidence. The court determined that disposition was necessary, and committed T.N.H. to the Texas Juvenile Justice Department for a determinate term of eight years, with a possible transfer to the Texas Department of Criminal Justice. T.N.H. now appeals.

## ANALYSIS

On appeal, T.N.H. raises three issues, asserting the in-court identification by Rodriguez was tainted by an impermissibly suggestive photo lineup, the evidence is factually insufficient to prove T.N.H.'s identity as the person who robbed Rodriguez at gun point, and the court erred in denying his motion for new trial based on newly discovered evidence.

### *Suggestive Pretrial Identification Procedure — Photo Lineup*

T.N.H. argues Rodriguez's in-court identification of him was tainted by an impermissibly suggestive pretrial identification procedure, i.e., the photo lineup. *See Loserth v. State*, 963 S.W.2d 770, 771–72 (Tex. Crim. App. 1998) (in-court identification is unreliable and thus inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification, and test is whether, considering the totality of the circumstances, the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification) (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968)). T.N.H. asserts the photo lineup was unduly suggestive because it only had one photo of a person with a birthmark. T.N.H. has a mark under his left eye.

---

[2] January 13, 2011 was a Thursday.

A defendant may challenge the admissibility of evidence in either of two ways: (1) by objecting to the admission of the evidence at the time it is offered at trial and requesting a hearing outside the presence of the jury; or (2) by filing a pretrial motion to suppress evidence and having it heard and ruled on before trial. *Holmes v. State*, 248 S.W.3d 194, 199 (Tex. Crim. App. 2008). Here, T.N.H. did neither. He filed a pretrial motion to suppress the identification evidence as impermissibly suggestive and unreliable, but did not obtain a ruling on the pretrial motion. During trial, T.N.H. raised no objection to Rodriguez's testimony concerning his identification of T.N.H. in the photo lineup or his testimony identifying T.N.H. in court. To preserve a complaint for appellate review, the record must show that the appellant made his specific complaint known to the trial court by a timely request, objection, or motion, and that the trial court ruled on the request, objection, or motion. TEX. R. APP. P. 33.1(a); *Ross v. State*, 678 S.W.2d 491, 493 (Tex. Crim. App. 1984). Because T.N.H. did not obtain a ruling on his motion to suppress or object to the identification evidence at trial, T.N.H. has failed to preserve this issue for review. TEX. R. APP. P. 33.1(a); *Aguilar v. State*, 26 S.W.3d 901, 905 (Tex. Crim. App. 2000); *Samarron v. State*, 150 S.W.3d 701, 704 (Tex. App.—San Antonio 2004, pet. ref'd).

### *Identity*

In his second issue, T.N.H. contends the evidence is factually insufficient to prove his identity as the person who committed aggravated robbery against Rodriguez. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (elements of aggravated robbery). Although civil in nature, juvenile proceedings are characterized as "quasi-criminal," and we apply the standard used in criminal appeals when reviewing a challenge to the sufficiency of the evidence in the adjudication phase of a juvenile proceeding. *In re K.T.*, 107 S.W.3d 65, 71 (Tex. App.—San Antonio 2003, no pet.); *In re T.K.E.*, 5 S.W.3d 782, 784–85 (Tex. App.—San Antonio 1999, no pet.). Because the Texas Court of Criminal Appeals has abolished factual sufficiency review in criminal cases, we

may only use the legal sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979), in reviewing the sufficiency of the evidence to support the court's finding that T.N.H. engaged in delinquent conduct by committing aggravated robbery. *See Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010); *In re H.T.S.*, No. 04-11-00847-CV, 2012 WL 6743562, at \*8 (Tex. App.—San Antonio Dec. 31, 2012, no pet. h.) (mem. op.). Accordingly, we will review T.N.H.'s issue as a challenge to the legal sufficiency of the evidence to prove identity.

In reviewing the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894–95 (citing *Jackson*, 443 U.S. at 319); *In re H.T.S.*, 2012 WL 6743562, at \*8. This standard accounts for the fact finder's role in resolving conflicts in the testimony, assigning weight to the evidence, and drawing reasonable inferences from basic facts to the ultimate facts. *In re H.T.S.*, 2012 WL 6743562, at \*8.

T.N.H. argues the evidence is insufficient to prove he was the person who robbed Rodriguez because Medellin was unable to identify T.N.H. and because there were some inconsistencies in the testimony given by Rodriguez and Medellin concerning the robbers' descriptions and the details of the robbery. As the trier of fact, the trial court was entitled to assess more weight to Rodriguez's positive in-court identification of T.N.H. as the person who pointed the gun at his chest and to Rodriguez's testimony that he picked out T.N.H.'s photo from a pretrial lineup, than to Medellin's inability to identify T.N.H. *See id.* As stated, *supra*, Medellin testified that he paid more attention to the gun than to the robbers' descriptions. The trial court was similarly entitled to resolve any conflicts in Rodriguez's and Medellin's testimony concerning the robbery and the robbers' descriptions. *Id.* Under a legal sufficiency standard, we

are required to defer to the fact finder's assessment of the credibility and weight of the evidence. *Brooks*, 323 S.W.3d at 899. Rodriguez's testimony constitutes legally sufficient evidence to establish T.N.H.'s identity as the person who committed aggravated robbery against him and, thus, supports the trial court's finding that T.N.H. engaged in delinquent conduct by committing the offense of aggravated robbery.

### *Motion for New Trial — Newly Discovered Evidence*

T.N.H. filed a motion for new trial alleging the existence of newly discovered evidence proving his innocence. He attached an NISD record showing that he purchased a school lunch on the day of the robbery. T.N.H. asserted the record shows that "in fact he was at school eating lunch during the period of the robbery, which would have made it difficult for the child to be at the scene of the crime." A brief evidentiary hearing was held at which T.N.H. presented the testimony of Leslie Valdez, Senior Revenue Clerk at NISD, authenticating the record as a computer screen shot of T.N.H.'s nutrition account showing that a lunch was charged to his account at 10:52 a.m. on the day of the robbery; the account is part of the NISD database tracking the history of purchases and payments made on students' accounts. Defense counsel argued that Martha Fernandez misled the court when she testified there was no way to show whether T.N.H. was at lunch on the day of the robbery. At the conclusion of the hearing, the trial court disagreed with counsel's characterization of Fernandez's testimony, stating that she had merely testified that she could not tell from the attendance records whether T.N.H. had remained at school during his lunch period. The court subsequently denied the motion for new trial. On appeal, T.N.H. argues the trial court erred in denying his motion for new trial based on the newly discovered evidence.

A motion for new trial must be granted where material evidence favorable to the accused has been discovered since trial. TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2006). The trial

court has discretion when ruling on a motion for new trial based on newly discovered evidence, and we will not reverse its ruling absent an abuse of discretion. *Keeter v. State*, 74 S.W.3d 31, 37 (Tex. Crim. App. 2002); *Jones v. State*, 234 S.W.3d 151, 157 (Tex. App.—San Antonio 2007, no pet.). The trial judge determines the credibility of the witnesses and whether the new evidence is probably true. *Keeter*, 74 S.W.3d at 37. In order to establish an abuse of discretion for failure to grant a motion for new trial based on newly discovered evidence, the appellant must show: (1) the evidence was unknown or unavailable to him at the time of trial; (2) his failure to discover or obtain the evidence was not due to a lack of diligence; (3) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably result in a different outcome following a new trial. *Id.* at 36–37. If the appellant fails to show any one of these prongs, he fails to establish an abuse of discretion by the trial court in denying the motion for new trial. *Jones*, 234 S.W.3d at 157.

T.N.H. failed to meet the first two prongs of the *Keeter* test in that he did not establish that the NISD lunch account record was unknown or unavailable to him at the time of trial, or that his failure to discover or obtain the record was not due to a lack of diligence on his part. *See Keeter*, 74 S.W.3d at 36. Valdez's testimony shows the lunch account record for January 13, 2011 existed in the NISD database of student accounts and was thus available to T.N.H. before trial; he simply failed to procure it. *See Jones*, 234 S.W.3d at 158 (defendant's medical records purportedly showing he was physically incapable of committing offense were known to and available to him before trial despite fact that his counsel failed to acquire them after obtaining a medical release).

In addition, T.N.H. also failed to meet the fourth *Keeter* prong because the lunch record does not establish an alibi defense. *See Keeter*, 74 S.W.3d at 37. It merely shows, at most, that T.N.H. was at school at 10:52 a.m.—it does not establish that he was present at school at any

time thereafter. Indeed, Hahne testified that Holmes High School students with fifth period lunch were free to leave school any time after 10:25 a.m. on exam days. The school buses did not begin running until 12:30 p.m., but she testified T.N.H. could have ridden a nearby city bus or gotten a ride with a friend. Rodriguez and Medellin could not pinpoint the exact time of the robbery, but both testified the earliest they left school was 11:00 a.m.; both put the time range between 11:00 a.m. and 12:30 p.m. Medellin testified they went to play basketball at about 2:00 p.m. or 2:30 p.m. Rodriguez testified that Holmes High School was approximately 45 minutes away from New Guilbeau Park by car. Thus, accepting as true that T.N.H. purchased a school lunch at 10:52 a.m., he still would have had time to travel from Holmes to the location of the robbery. T.N.H. has not established that the school record showing lunch was charged to his student account at 10:52 a.m. would probably result in a different outcome at a new trial. *See id.*

Finally, with respect to T.N.H.'s assertion that the lunch account record proves the testimony of Fernandez and Hahne was "false," we disagree. Fernandez and Hahne, assistant principals in charge of attendance at Taft and Holmes High Schools, respectively, testified they could not confirm whether or not T.N.H. stayed at school on the day of the robbery after 10:25 a.m. when he entered his lunch period because no attendance is taken during lunch. The record shows both Fernandez and Hahn based their testimony solely on attendance records, not student lunch account records.

We conclude the trial court did not abuse its discretion in denying T.N.H.'s motion for new trial based on newly discovered evidence. *Id.* at 36–37.

## CONCLUSION

Based on the foregoing reasons, we affirm the trial court's judgment.

Rebeca C. Martinez, Justice

DO NOT PUBLISH