COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-053-CR

 

 

RICARDO MERCADO DIAZ                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

MEMORANDUM OPINION[1]

                                              ------------

Ricardo Mercado Diaz appeals
his conviction for indecency with a child and aggravated sexual assault of a
child.  In three points, he complains
that the evidence is factually insufficient to support his conviction and that
the trial court abused its discretion by denying his motion for new trial based
on newly discovered evidence.  We affirm.








Appellant was indicted for
indecency and aggravated sexual assault of his step-daughter, J.O., who was
seven years old at the time of trial.  A
jury found him guilty of both offenses, and the trial court assessed his
punishment at twenty years= confinement for indecency with a child and fifty years= confinement for aggravated sexual assault of a child.

In his first point, appellant
asserts that the evidence is factually insufficient to support his conviction
because J.O.=s testimony
was orchestrated by her grandmother, who had a motive to create false
allegations of sexual abuse in order to have appellant imprisoned and deported;
the grandmother=s testimony
was untruthful, inconsistent, and motivated by malice against appellant; the
nurse=s testimony was inconclusive, unreliable, and inconsistent with J.O.=s testimony; CPS did not conduct a thorough examination; and weather
conditions influenced the jury to reach a quick verdict against appellant. 








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party.[2]  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.[3]  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts
the  the verdict.[4]








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@[5]  We cannot conclude that a
conviction is clearly wrong or manifestly unjust simply because we would have
decided differently than the jury or because we disagree with the jury=s resolution of a conflict in the evidence.[6]  We may not simply substitute our judgment for
the fact-finder=s.[7]  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@[8]  Thus, we must give due
deference to the fact-finder=s determinations, Aparticularly those determinations concerning the weight and
credibility of the evidence.@[9] 

An opinion addressing factual
sufficiency must include a discussion of the most important and relevant
evidence that supports the appellant=s complaint on appeal.[10]  Moreover, an opinion reversing and remanding
on factual insufficiency grounds must detail all the evidence and clearly state
why the finding in question is factually insufficient and under which ground.[11]

The following evidence was
presented to the jury at the guilt-innocence phase of the trial:








When J.O. was seven years
old, she lived in The Colony with her mother, Bessy Ortez; her two brothers;
and her stepfather, appellant.  J.O.
stated that during that time, appellant always took care of the children on Sundays
when Bessy worked.

According to J.O., appellant Atouched@ her in the
living room and bathroom of her house on the Sundays her mother worked.  J.O. testified that the most recent time
appellant Atouched@ her was on March 20, 2005, a Sunday, in the bathroom her mother and
appellant shared.  J.O. stated that
appellant asked her to come to the bathroom, and when she got there, he asked
her to take off her clothes.  After she
took off all of her clothes, appellant picked her up, put her on the sink,
locked the door, and turned off the light. 
J.O. then began to describe how appellant had Asqueezed@ her, but
then stated that she had Amessed up@ because she had Askipped something@ when she forgot to mention that appellant Aunzipped his zipper and then took out his private.@  J.O. then testified that
appellant Aunzipped his
zipper,@ Atook out his
private,@ and put his Aprivate@ into her Aprivate.@  J.O. described appellant=s Aprivate@ as Akind of
straight, but a little bit hanging [down].@  J.O. then used dolls to
demonstrate to the jury what appellant had done. 








J.O. testified that appellant
had touched her at least one other time while they were in the living room of her
house in The Colony.  On that occasion,
appellant and J.O. were sitting on the couch together when appellant touched
her Aon [her] private@ and Awould move his finger in [her] private up and down.@  On March 21, 2005, the day after the last assault, J.O. told her
grandmother, Rosa Ortez, about what appellant had done.  J.O. told Rosa first because she trusted
her.  After J.O. told her about the
abuse, Rosa immediately examined J.O.=s private parts.  J.O. then
wrote down what happened on a piece of paper without help from Rosa or any
other person.  

On cross-examination, J.O.
testified that Rosa had previously told her that appellant was not her
biological father, which made her Aa little bit@ sad, and
that she was not as happy as when she thought appellant was her real father.
J.O. testified that from time to time, she wrote her thoughts in a diary or
journal, and that one day, she wrote that her mother was mean and that her
grandmother was her mother.  

Rosa, J.O.=s grandmother, testified that for several months before J.O.=s outcry, Rosa would occasionally watch Bessy=s children on Sundays, but that appellant would usually watch the
children on those days.  On March 21,
2005, when J.O. made her outcry to Rosa, Rosa waited for Bessy to come home and
then told her what J.O. had said.  Rosa,
Bessy, and J.O. went to the house in The Colony to confront appellant, and
appellant denied J.O.=s
accusations.  On Friday, March 25, 2005,
Bessy and Rosa took J.O. to the hospital. 









At the hospital, J.O. was
examined by Paula Fornara, a sexual assault nurse, approximately five days
after the last assault.  Fornara
testified that about ninety-six percent of sexual assault exams do not show
injuries, but she found two injuries to J.O.=s genitalia, including an abrasion that indicated some sort of blunt
force trauma.  Fornara testified that
J.O.=s injuries were consistent with the girl=s story and that she found medical evidence that J.O.=s sexual organ had been penetrated. 
Fornara further stated that the areas where she had found injuries would
not be areas that a child would scratch or touch herself because it would be Aextremely painful@ to a child J.O.=s age;
Fornara admitted, however, that it was Apossible@ that the
abrasion to J.O.=s genitalia
could be a scratch.  Fornara also stated
that J.O. had told her that appellant had assaulted her practically every
Sunday, but Fornara did not obtain a history of each assault.  








Bessy testified that
appellant watched her children on Sundays while she was at work, but Anot every Sunday.@  She said that J.O. told her
the same thing she told Rosa about the last assault.  Bessy also acknowledged that she had heard
from one of appellant=s sisters
that appellant had put cream on J.O.=s private parts, which she thought was unusual because appellant had
no responsibility for tending to J.O. in that way.  Bessy said that in October of 2004, Rosa told
her that she suspected appellant was sexually abusing J.O. because she had
noticed that J.O.=s private
parts were inflamed.  She further
testified that Rosa did not like appellant and that Rosa and appellant argued
about who would be able to claim Bessy=s children as dependents for tax purposes. 

Rosa testified, however, that
before J.O.=s outcry,
she believed appellant was a good man and a good provider.  She denied that she and appellant had argued
about claiming Bessy=s children
on her income taxes.  

Avis Clark, a CPS
investigator, conducted a forensic interview with J.O., which was videotaped
and admitted into evidence.  Clark
testified that she was aware that children could be coached by a dominant adult
or could lie, but she had no reason to suspect that, in this case, J.O. was
lying or had been coached.








After reviewing the evidence
in a neutral light, we conclude that the evidence is factually sufficient to support
appellant=s
conviction.[12]  There is no evidence that Rosa manipulated
J.O. into falsely accusing appellant of assaulting her; in fact, the CPS
investigator testified that she had no reason to suspect that J.O. had been
manipulated in this case.  To the extent
that there were inconsistencies among the 
testimony of Rosa, Bessy, and J.O. regarding how often appellant took
care of J.O. on Sundays, whether Rosa did not like appellant, and whether
appellant and Rosa had argued about claiming Bessy=s children as dependents on their tax returns, we must defer to the
jury=s determinations concerning the weight and credibility of the
evidence.[13]  We must give the same deference to the jury=s determinations regarding the testimony of the CPS investigator and
the nurse.[14]  Because the evidence supporting the verdict
in this case is not so weak as to render the verdict clearly wrong or
manifestly unjust, we overrule appellant=s first point.[15]








In his second and third
points, appellant asserts that the trial court abused its discretion by denying
appellant=s motion for
new trial based on newly discovered evidence. 
Appellant contends that his diligent investigation led him to obtain the
affidavit of Moris Medina, Rosa=s coworker, who stated that Rosa was upset with appellant in January
of 2004 because he and Bessy were moving out of Rosa=s house.  Medina further stated
that Rosa had told him that she would Adestroy the life of [appellant] and remove him from the family.  That if Bessy [got] in [her] way, [she would]
run over her too and take the children away from her.@  According to appellant, this
newly discovered evidence would bring about a different result in another trial
because it shows Rosa=s malicious
intent to prosecute appellant.  








A new trial shall be given to
an accused where material evidence favorable to the accused has been discovered
since trial.[16]  A trial court has discretion to decide
whether to grant a new trial based upon newly discovered evidence, and its
ruling will not be reversed absent an abuse of discretion.[17]  The trial court=s discretion extends to situations in which the newly discovered
evidence is the retraction of a witness=s testimony.[18]  To establish an abuse of discretion in the
failure to grant a new trial based on newly discovered evidence, the appellant
must show that (1) the evidence was unknown to him before trial, (2) his
failure to discover the evidence was not due to a lack of diligence, (3) it is
probably true, and its materiality will probably bring about a different result
upon a new trial, and (4) it is competent, not merely cumulative,
corroborative, collateral, or impeaching.[19]   Motions for new trial based upon newly
discovered evidence are not favored by the courts and are viewed with great
caution.[20]








As his sole basis for
admission of the proffered statement, appellant cites the rule governing
impeachment by bias or interest and asserts that the statement is admissible to
impeach Rosa=s testimony
that she liked appellant and thought he was a good provider.[21]  Therefore, the main purpose of the evidence
was to impeach Rosa=s
credibility.  The evidence is also
cumulative because, even without the proffered statement, appellant was able to
present evidence to support his defensive theory that Rosa coached J.O. based
on her hatred for appellant through Bessy=s testimony that Rosa and appellant did not get along, that Rosa had
suspected appellant of sexually abusing J.O. as early as 2004, and that Rosa
had argued with appellant in the past about claiming Bessy=s children as dependents for income tax purposes.  Further, given that the jury rejected the
significance of the impeachment evidence and the defensive theory during
appellant=s trial,
there is no basis for concluding that a second jury would probably reach a
different result in considering additional evidence with the same impeachment
value.  We therefore have no basis for
concluding that the undisclosed evidence will probably bring about a different
result in another trial.[22]  Accordingly, we hold that the trial court did
not abuse its discretion by denying appellant=s motion for new trial, and we overrule appellant=s second and third points. 

Having overruled appellant=s three points, we affirm the trial court=s judgment. 

PER CURIAM

PANEL A: 
CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DO NOT PUBLISH        

Tex. R. App. P. 47.2(b)

DELIVERED: 
MAY 3, 2007                           

 

 











[1]See Tex. R. App. P. 47.4.





[2]Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).





[3]Watson, 204
S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).





[4]Watson, 204
S.W.3d at 417.





[5]Id.





[6]Id.





[7]Johnson, 23
S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).





[8]Johnson, 23
S.W.3d at 8.





[9]Id. at
9.





[10]Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).





[11]Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); Johnson,
23 S.W.3d at 7.





[12]Watson, 204
S.W.3d at 414-15, 417; Johnson, 23 S.W.3d at 11.





[13]See
Johnson, 23 S.W.3d at 8.





[14]To the
extent that appellant asserts that Fornara=s testimony was unreliable,
he has forfeited the complaint because he did not make such an objection at
trial.  See Tex. R. App. P. 33.1(a)(1) (requiring a
party to present the specific grounds for an objection to preserve a complaint
for review).





[15]Appellant
cites no facts within the record to support his assertion that the jury=s
verdict was influenced by the dangerous weather conditions the last day of
trial.  Therefore, we will not address
this complaint.  See Tex. R. App. P. 38.1(h).





[16]Tex. Code Crim. Proc. Ann. art.
40.001 (Vernon 2006).





[17]Keeter
v. State, 74 S.W.3d 31, 37 (Tex. Crim. App. 2002); Frank
v. State, 183 S.W.3d 63, 71 (Tex. App.CFort Worth 2005, pet. ref=d).





[18]Keeter, 74
S.W.3d at 37; Frank, 183 S.W.3d at 71.





[19]Keeter, 74
S.W.3d at 37; Frank, 183 S.W.3d at 71.





[20]Drew
v. State, 743 S.W.2d 207, 225 (Tex. Crim. App. 1987), cert.
denied, 509 U.S. 925 (1993).





[21]See Tex. R. Evid. 613(b).





[22]Keeter, 74
S.W.3d at 36‑37.